IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-771-FL

| | | |
|---|---|---|
| GLENDA LOWERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Glenda Lowery ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-10] be denied and Defendant's Motion for Judgment on the Pleadings [DE-12] be granted.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability and DIB on March 15, 2011 (Tr. 86), alleging disability beginning March 15, 2009 (Tr. 165). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 86, 98.) On May 20, 2013, a hearing was held before Administrative Law Judge McArthur Allen ("ALJ"), who

issued an unfavorable ruling on June 28, 2013. (Tr. 26, 31.) On September 26, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in

substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment between March 15, 2009, and her date last insured of December 31, 2011. (Tr. 19.) Next, the ALJ determined Plaintiff had the following severe impairments: "diabetes mellitus, diabetic neuropathy, degenerative disc disease of the lumbar spine, obesity, and depression." (*Id.*) However, at step three, the ALJ concluded Plaintiff's

3

Case 5:14-cv-00771-FL   Document 15   Filed 08/25/15   Page 3 of 8

impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-21.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform light work with the following limitations:

> [O]nly occasional climbing stairs or ramps; occasional bending, balancing, stooping, crawling, kneeling, or crouching; never climbing ladders, ropes, or scaffolds; avoid occupations with hazardous machinery; frequent not constant fingering, grasping and handling bilaterally; frequent not constant contact with coworkers and general public; and simple, routine, repetitive tasks.

(Tr. 15.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 18.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work. (*Id.*) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 19-20.)

## IV.    Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred in his evaluation of Plaintiff's neuropathy when assessing her RFC. Second, Plaintiff asserts that the ALJ failed to consider Plaintiff's Degenerative Joint Disease in her knee as a severe impairment and improperly assessed her limitations when assessing her RFC.

### A.    Neuropathy

First, Plaintiff contends that the ALJ improperly evaluated Plaintiff's neuropathy when assessing her RFC. Plaintiff argues that although her A1C levels and gait were reported as

normal, this does not explain why she is capable of more than sedentary work.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The record in this case indicates that Plaintiff has been diagnosed with neuropathy and has experienced sensory changes in her lower extremities. The ALJ determined that Plaintiff's neuropathy was a severe impairment and noted the sensory changes that were present in Plaintiff's lower extremities. However, there is no indication from Plaintiff's treating physicians how her neuropathy or resultant sensory changes affect her ability to walk or otherwise limit her functional abilities. On August 27, 2009, medical records indicate that Plaintiff's gait was normal, she had some decreased sensation on the bottom of her feet, and her neuropathy was stable. (Tr. 309.) On December 9, 2009, Plaintiff had numbness and tingling in her lower extremities and sensory changes were noted in the lower extremities up to her shins. (Tr. 279.) On June 28, 2010, Plaintiff had decreased sensation in her feet. (Tr. 323.) On July 13, 2010, the physician indicated Plaintiff had neuropathy secondary to diabetes. (Tr. 277.) On July 21, 2010, the physician noted that Plaintiff had "some diabetic neuropathy and it was getting pretty severe."

5

(Tr. 327.) As of March 30, 2011, Plaintiff indicated she was capable of "mopping/scrubbing bathrooms and floors, using cleaning products, doing some yard work, mowing, raking & etc." (Tr. 217.) Plaintiff also indicated she did the weekly grocery shopping and would "go up and down each and every isle [sic]" if she had forgotten her list. (Tr. 218.)

The ALJ analyzed Plaintiff's neuropathy and daily activities in his decision. He accounted for Plaintiff's severe impairments, including her neuropathy, by limiting her to light work, occasional climbing of stairs and ramps, and never climbing ladders, ropes, or scaffolds. (Tr. 21.) There is no indication in the medical record that Plaintiff's limitations exceed those recognized by the ALJ. Thus, the ALJ's assessment of Plaintiff's neuropathy is supported by substantial evidence.

      **B.**     **Degenerative Joint Disease**

Plaintiff next contends that the ALJ erred in assessing Plaintiff's degenerative joint disease in her knee. Plaintiff argues that the ALJ should have listed her degenerative joint disease as a severe impairment and that it was not properly considered by the ALJ in determining Plaintiff's RFC.

On January 8, 2009, Plaintiff complained of left knee pain. (Tr. 305.) The physician noted there was "some mild medial joint line pain of the left knee" and "minimal effusion." (Tr. 306.) The assessment of Plaintiff's x-ray stated, "Mild tricompartmental [degenerative joint disease] with small marginal osteophytes. Superior patellar spurring. No fracture or subluxation. No joint effusion identified." (Tr. 303.) Plaintiff also points out that she had a positive straight leg raise test in February 2010. However, the positive straight leg raise test was in reference to Plaintiff's back pain and not her knee pain.

The only evidence of Plaintiff's knee pain in the record occurred on January 8, 2009. There is no evidence indicating joint pain in her knee after that date. It was noted that Plaintiff suffered no joint pain upon examination on August 27, 2009 (Tr. 309). Medical records indicate that Plaintiff suffered hip pain associated with back pain on January 20, 2010, and February 11, 2010 (Tr. 316, 319). However, there is no indication Plaintiff suffered knee pain due to her degenerative joint disease after January 8, 2009. Thus, substantial evidence supports the ALJ's findings in this regard.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-10] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-12] be GRANTED and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until September 10, 2015, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district

judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 24th day of August 2015.

                                                                                       KIMBERLY A. SWANK
                                                                                       United States Magistrate Judge